# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

JULIA C.,[1]

        Plaintiff,

vs.

FRANK BISIGNANO,
Commissioner of Social Security,

        Defendant.

No. 25-CV-4034-CJW-KEM

**REPORT AND RECOMMENDATION**

_____

Plaintiff Julia C. seeks judicial review of the Commissioner of Social Security's denial of applications for disability insurance (DI) benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383(f). Plaintiff argues the administrative law judge (ALJ) erred in denying benefits by adopting a manipulative limitation not supported by any medical opinion and failing to develop the record on Plaintiff's limitation in manipulative functioning. I recommend **affirming** the Commissioner's decision.

## I. BACKGROUND

Plaintiff challenges the denial of benefits based on the ALJ's determination of a physical limitation in Plaintiff's ability to manipulate due to her peripheral neuropathy.[2] Plaintiff initially alleged disability due to multiple conditions, including joint pain,

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] I do not address aspects of the ALJ's decision involving mental and other physical impairments that are unchallenged by Plaintiff.

obesity, and fibromyalgia. AR 81, 91, 103, 113, 254.[3] Her claim was denied on both initial and reconsideration reviews. AR 89, 99, 101-02, 112, 122-24. During the initial review, obesity was found to be Plaintiff's sole severe impairment, and a state agency consultant, Rene Staudacher, DO, found Plaintiff had no manipulative limitations. AR 83, 85-86, 93, 95-96. On reconsideration, Plaintiff alleged additional disabling conditions, including fibromyalgia, and her severe physical impairments were found to include peripheral neuropathy. AR 103, 105, 113, 115. Even with these changes, state agency consultant Chrystalla Boyadjis, DO, concurred with the initial determination that Plaintiff had no limitation in her ability to manipulate items. AR 107-08, 117-19.

The ALJ held an administrative hearing on May 16, 2024. AR 51-80. Plaintiff's attorney included neuropathic pain in the list of Plaintiff's diagnoses. AR 57-58. Plaintiff discussed suffering from daily pain, including nerve tingling, numbness, and shooting and burning pain from her fingers to her elbows. AR 60-61, 65, 67, 70. Plaintiff testified she used distraction to help manage pain, including by drawing or being on her phone. AR 67. She had also played video games until she sold her gaming console in 2019. AR 67. She testified she had braces for both wrists and was supposed to wear compression gloves but had not found any that fit her hands. AR 68-69. When asked about any difficulties in using her hands, such as buttoning, zipping, and picking up change, she indicated she required help opening jars and containers, could not write or draw for long periods of time because her fingers would swell and hurt, and had tingling from her fingers up her arms. AR 69. Plaintiff estimated she could hold a video game controller for around five to ten minutes before it affected the tingling in her fingers and arms, caused muscle spasms in her hands, and made her unable to move her thumbs. AR 69-70.

---

[3] "AR" refers to the administrative record below (Doc. 9).

2

The ALJ issued a written opinion on July 12, 2024, following the five-step process outlined in the regulations.[4]  AR 23-35, 51-80.  The ALJ found Plaintiff's severe impairments included obesity, hypermobility spectrum disorder, fibromyalgia, and peripheral neuropathy.  AR 26.  The ALJ found the state agency consultants' conclusions were generally persuasive, but the ALJ included additional "manipulative[] limitations, based on [Plaintiff]'s peripheral neuropathy."  AR 33.  The ALJ determined Plaintiff had the RFC[5] to perform light work and included a manipulation limitation—frequently handling, fingering, and feeling.  AR 29.  The ALJ considered testimony at the administrative hearing from a vocational expert (VE).  AR 34.  The VE had testified that with the RFC included in the ALJ's decision, Plaintiff could perform work—both with and without the limitation in manipulating items.[6]  AR 75-76.  The ALJ found that with this RFC, Plaintiff could perform work as a housekeeping cleaner, routing clerk, and marker, and was therefore not disabled.  AR 34-35.

The Appeals Council denied Plaintiff's request for review on May 6, 2025 (AR 6-9), making the ALJ's decision that Plaintiff was not disabled the final decision of the Commissioner.[7]  The Appeals Council extended the time for filing a civil action for

---

[4] "During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security . . . listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work." *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)); *see also* **20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)**.  The claimant bears the burden of persuasion to prove disability.  *Goff*, 421 F.3d at 790.

[5] Residual functional capacity (RFC) means "the most that a claimant can do despite her limitations."  *Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019) (citing **20 C.F.R. § 404.1545(a)(1)**).

[6] The VE testified that a limitation to only occasionally handling, fingering, and feeling would preclude light and sedentary work.  AR 78.

[7] *See* **20 C.F.R. §§ 404.981, 416.1481**.

3

review (AR 1-2), and Plaintiff filed a timely complaint in this court. Docs. 1, 5.[8] The parties briefed the issues (Docs. 11-13) and the Honorable C.J. Williams, Chief Judge for the Northern District of Iowa, referred this case to me for a report and recommendation.

## II. DISCUSSION

So long as substantial evidence in the record as a whole supports the ALJ's decision, a reviewing court must affirm.[9] "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision."[10] The court "do[es] not reweigh the evidence or review the factual record de novo."[11] If, after reviewing the evidence, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, [the court] must affirm the decision."[12]

Plaintiff argues the ALJ erroneously played "doctor" by including a manipulative limitation in the RFC that was not supported by any medical opinion. Plaintiff also argues the ALJ should have further developed the record to determine Plaintiff's functional ability and limitations with manipulation. Plaintiff asserts that these errors resulted in an RFC that is supported by neither substantial evidence nor some medical evidence.

> An ALJ determines a claimant's RFC "based on all the relevant evidence including medical records, observations of treating physicians and others, and an individual's own description of her limitations." "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in

---

[8] *See* **20 C.F.R. § 422.210(c)**.

[9] *Grindley*, 9 F.4th at 627; *accord* **42 U.S.C. § 405(g)**.

[10] *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

[11] *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994).

[12] *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

4

the workplace." The ALJ "may not simply draw his own inferences about plaintiff's functional ability from medical reports."[13]

An ALJ must fully and fairly develop the record but need not seek additional clarification from a medical provider unless a critical issue is undeveloped.[14]

Here, the ALJ found Plaintiff's severe impairments included peripheral neuropathy, consistent with the state agency consultant's finding on reconsideration review. The ALJ cited medical evidence in the record supporting this diagnosis. *See* AR 31, 33, 455 (nerve condition study and needle EMG showing generalized peripheral neuropathy with no entrapment neuropathy or myopathy). The ALJ found Plaintiff's statements about numbness, tingling, and weakness in her hands and upper extremities were not entirely consistent with the record. AR 30. The ALJ also considered Plaintiff's activities of daily living—writing, playing video games and board games, doing puzzles, and using social media. AR 32. While recognizing Plaintiff suffered peripheral neuropathy, the ALJ cited records showing Plaintiff maintained intact sensation and strength. AR 31, 532, 567. Despite the state agency consultants concluding Plaintiff had no limitation in manipulative functioning, the ALJ restricted Plaintiff to frequently handling, fingering, and feeling. AR 29. The ALJ concluded that "[f]requent manipulative limitations adequately account for [Plaintff's] symptoms." AR 31.

Plaintiff argues the case must be reversed because the ALJ found Plaintiff more limited in her ability to manipulate than the conclusions of the medical opinions. Plaintiff relies on a case from the District of Minnesota that supports reversal on that issue.[15] In

---

[13] *Combs v. Berryhill*, 878 F.3d 642, 464 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004); and *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).

[14] *Combs*, 878 F.3d at 646-47.

[15] *See William H. v. O'Malley*, No. 23-CV-1737, 2024 WL 3862679, at *6-8 (D. Minn. July 29, 2024), *report and recommendation adopted*, 2024 WL 3895779 (Aug. 21, 2024) (clear error review).

5

*William H. v. O'Malley*, all medical opinions in the record found claimant could stand or walk for six out of eight hours per day. The ALJ determined claimant was more limited and could only stand or walk for four hours per day. The district court reversed because no medical opinion included that limitation. The court found it "of no consequence" that the ALJ found the claimant more restricted than the medical opinions. The court concluded that because the ALJ believed the record supported "the need for a limitation greater than the limitation opined by the medical professionals in the record, then the ALJ was obligated to seek additional evidence on this issue."[16] I do not find this reasoning persuasive, especially based on the record in this case. Plaintiff did not allege disability due to manipulation issues. Nor did Plaintiff indicate in her function report that she had any issues with manipulation. AR 281. The ALJ did not fully credit her complaints of numbness, tingling, and pain in her fingers and hands (AR 30)—a conclusion she does not challenge. The ALJ noted Plaintiff's obesity could affect her ability to manipulate objects and that testing found "generalized peripheral neuropathy" in her upper right extremity. AR 31. The record could support a finding that Plaintiff required no limitations in her ability to manipulate items. Thus, the only basis to reverse the ALJ's decision to impose a greater restriction on Plaintiff's ability to function would be that the limitation was not supported by a medical opinion in the record—i.e., "some medical evidence."

A recent majority opinion from the Eighth Circuit rejected the idea that an ALJ's conclusion about an RFC limitation must be supported by "functional [i.e. some] medical evidence," defined "as a 'medical professional's opinion . . . regarding [the claimant's] ability to function in the workplace.'"[17] "[A]n RFC must be based on some reliable

---

[16] *William H.*, 2024 WL 3862679, at 7.

[17] *Bonham v. Bisignano*, No. 24-2999, 2026 WL 1549311, at *5 (8th Cir. June 2, 2026) (to be published in the Federal Reporter, Fourth Series).

medical evidence about the claimant's ability to function in the workplace, not that the evidence must be functional in-and-of-itself."[18]  *Bonham* further undercuts Plaintiff's argument that this case must be remanded because no specific medical opinion found Plaintiff limited to frequent manipulation.  And the remainder of the cases cited by Plaintiff are distinguishable from this case, because here, the medical opinions were consistent, the ALJ found the medical opinions partially persuasive, the ALJ agreed that Plaintiff's condition was severe, and the ALJ found Plaintiff more (not less) limited than the medical opinions.[19]

### III.   CONCLUSION

I recommend **affirming** the decision of the Social Security Administration.

Objections to this Report and Recommendation must be filed within fourteen days of service in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure

---

[18] *Id*. at *6.

[19] *See Pamela K. v. Kijakazi*, No. 21-cv-690, 2022 WL 2835069, at *13-14 (D. Minn. July 20, 2022) (finding error where ALJ rejected medical opinions based on ALJ's interpretation of medical records and concluded claimant's impairments were non-severe, contrary to the medical opinions); *Reza v. Saul*, No. 4:19-cv-4124, 2020 WL 1866477, at *20 (D.S.D. Apr. 14, 2020) (noting that where ALJ found condition was severe but state agency consultants found it non-severe, medical opinions did not address claimant's functional limitations); *Eden v. Saul*, No. 18-cv-76, 2019 WL 5260476, at *3-5 (N.D. Iowa Oct. 17, 2019) (finding ALJ improperly inferred from treatment notes, and not medical opinions or conclusions of treating physician, that claimant had improved and that ALJ's conclusion claimant was less limited than state agency consultants (moderate versus marked limitations in social functioning) was not supported by substantial evidence); *Myatt v. Colvin*, No. 3:14-cv-249, 2015 WL 5996304, at *3 (E.D. Ark. Oct. 14, 2015) (taking issue with the great weight the ALJ gave to state agency opinions that differed from treating source opinions and finding the ALJ improperly drew inferences from progress notes, making it unclear what the ALJ relied upon in formulating RFC); *Thesing v. Colvin*, No. 13-cv-1079, 2014 WL 3890372, at *23–25 (D. Minn. Aug. 8, 2014) (finding ALJ's conclusions not supported by substantial evidence but, rather, were contradicted by the record, meaning ALJ improperly substituted her judgment over those of claimant's mental health providers; concluding ALJ clearly erred by drawing inferences from mental health records without any medical support where ALJ found records were in conflict).

72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.[20] Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein.[21]

**DATED** June 12, 2026.

Kelly K.E. Mahoney
Chief Magistrate Judge
Northern District of Iowa

---

[20] **Fed. R. Civ. P. 72**.

[21] *See* **United States v. Wise**, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

8